American Union Telegraph Co. *v.* Town of Harrison.

THE AMERICAN UNION TELEGRAPH COMPANY

*v.*

THE TOWN OF HARRISON.

1. Under the eighth section of the general telegraph law, the authorities of an incorporated town have a right to designate the street route on which a telegraph line shall pass through the town, but they have no right to refuse to allow the line to pass at all.

2. Where the poles of a telegraph line, in an incorporated town, are erected outside of the streets, and on private property, and the wires hung thereon, where they overhang the streets, are placed at an elevation sufficiently high not to impede, obstruct or endanger the full, free and safe use of the streets, the town authorities have no right to destroy them.

3. Under the last clause of the eighth section of the general telegraph law, the authorities of an incorporated town are authorized to prescribe regulations fixing the elevation at which telegraph wires shall cross the streets of the town, but until regulations on this subject are

NOTE.—For other instances of overhanging obstructions, see *Grove* v. *Fort Wayne, 45 Ind. 429; French* v. *Brunswick, 21 Me. 29; Jones* v. *Boston, 104 Mass. 75; Day* v. *Milford, 5 Allen 98; Salisbury* v. *Herchenroder, 106 Mass. 458; Jones* v. *New Haven, 34 Conn. 1; Hewison* v. *New Haven, Id. 136; Norristown* v. *Moyer, 67 Pa. St. 355; Hume* v. *New York, 46 N. Y. 639; Taylor* v. *Peckham, 8 R. I. 349.*—REP.

adopted, the authorities are not at liberty to treat such use of the streets, for that purpose, as in no way impedes or endangers their full, free and safe use, as a nuisance.

On an order to show cause why an injunction should not issue, heard on bill and affidavits on the part of the complainants, and on affidavits on behalf of the defendants.

*Mr. B. A. Vail* and *Mr. John P. Jackson,* for complainants.

*Mr. E. L. Price* and *Mr. J. D. Bedle,* for the defendants

The Vice-Chancellor.

This is an injunction bill. The complainants are engaged in the construction of an electric telegraph between the cities of New York and Philadelphia. On the morning of the day on which their bill in this case was filed, their line between New York and Newark was completed and telegraphic communication established. For part of the distance between these points their line passes over territory under the jurisdiction of the defendants. The poles erected within this territory are erected outside of the streets or highways, and upon private property, but the wires hung thereon overhang some twenty streets, at an elevation of about twenty-five feet above the roadway. These poles were erected with the permission of the owners of the soil, but without the permission of the defendants. No opposition seems to have been made to the erection of the poles, but the wires were attached to them and stretched from pole to pole, according to the affidavits read on behalf of the defendants, in defiance of their power, and only by the exercise of superior force. The bill charges that the defendants intend to destroy the line by cutting the wires where they overhang the streets, and asks that they be enjoined.

When the order to show cause was applied for in this case, strong doubts were expressed whether the bill stated

any fact which could properly be regarded as the act of the defendants as a municipal body, that would authorize the interference of this court. The bill simply charged that certain officers of the town had opposed the hanging of the wires, and that one of them, claiming to represent the town, threatened, if the wires were put up, that the town would cut them down. The bill exhibited such a meagre case that I hesitated to grant the order to show cause. All doubt upon this subject has, however, been dissipated by the defendants. They answer the order to show cause, not by disclaiming responsibility for the conduct of their officers, but attempt to show that, as a municipal body, they resisted the erection of the wires by force, almost to riot and bloodshed. They do not attempt to deny or conceal the fact that it is their purpose, if relieved from restraint, to commit the injury against which the complainants appeal to the court for protection.

There can be no doubt that the injury apprehended belongs to the class which it is the duty of a court of equity to prevent *in limine*. If the wires are cut or broken, even at a single point, the line between its principal termini is completely destroyed. Unless the mischief threatened is prohibited at the very outset, it is undeniable the complainants must suffer serious and irreparable loss.

The complainants were organized under the general telegraph law (*Rev. p. 1174*). The eighth section is the only part of the act containing anything material to this controversy. It first grants to any corporation organized under it, the right to use the public highways of the state for the purpose of erecting posts or poles, upon first obtaining the consent, in writing, of the owners of the soil. It then provides that no posts or poles shall be erected in any street of any incorporated town, without first obtaining from the town a designation of the streets in which the same shall be placed, and the manner of placing the same. This, beyond all doubt, must be construed to be a plain inhibition against the use of the streets by any telegraph company, for the

purpose of erecting their poles therein, without first apply-
ing to the municipal authorities for direction as to where
and in what manner they shall be erected. The legislative
purpose is very plain. The design is to invest telegraph
companies with the right to use the streets of an incorpo-
rated town for the purpose of erecting their poles therein,
subject, nevertheless, to such municipal control as shall be
necessary to secure to the public, safety, convenience and
freedom in the use of the streets. The municipal authori-
ties may say what streets shall be used, at what points in
the streets the poles shall be erected, and how they shall be
planted and secured, but they have no power to lay an
embargo. They have a right to regulate, but not to inter-
dict. And their regulations, to be valid, must be reason-
able and fair. But this provision has no application to the
case in hand. The complainants have erected their poles
outside of the streets, on private property, and so long as
the poles in no way imperil the safety of those who use the
streets, the town authorities can lawfully exercise no control
over them.

But another part of this section must be considered. By
the last clause, it is enacted, " That the use of the public
streets, in any of the incorporated towns (by any corporation
organized under this act), shall be subject to such regula-
tions and restrictions as may be imposed by the corporate
authorities." The clause previously considered related only
to such use of the streets as would be made if poles were
erected therein; the clause just quoted is much broader,
and comprehends any use which can be made of them by a
telegraph company. It comprehends hanging wires over
the roadway. The public easement is not limited to the
use of the soil of the highway, but extends upward indefi-
nitely. A barrier stretched above the roadway, or the
bough of a tree overhanging it, may constitute a nuisance.
*Barber* v. *Roxbury, 11 Allen 320; Angell on Highways* § *223.*

Under this clause the town authorities may adopt regu-
lations fixing the elevation at which telegraph wires shall

American Union Telegraph Co. *v.* Town of Harrison.

cross the streets, and they may also prescribe such other precautions as may be reasonably necessary to the safety of travel. But no such regulations have been adopted by the defendants. So far as appears, the town authorities have never even entered upon the consideration of the question, whether it is expedient or not to exercise the power given to them by this clause. When, by appropriate proceedings, they shall have prescribed regulations on this subject, the complainants will be obliged to conform to them, but, in the meantime, they cannot compel the complainants to desist from the further construction of their work.

Upon the facts before me, there is no reason whatever to believe that the wires, as they now overhang the streets, do, in the slightest degree, impede or endanger their full, free and safe use. I am of opinion that the complainants, in erecting their poles on private property, and in hanging their wires on them at an elevation of twenty-five feet above the roadway, did nothing but what they had an unquestionable, legal right to do, and that the defendants should be enjoined from cutting the wires, or otherwise unlawfully interfering with them.